---

**ADRIANA DEL ROCIO**
**BARBERENA-ROVIRA, OSWALDO**
**FERNANDEZ-SOLIS, PEDRO**
**MACHADO-ANGULO**
**& IVAN MORALES-MORALES,**

         Plaintiffs,                    Case No. 6:20-cv-250

      v.

**KUIPER DAIRY, LLC, CLEMENS**                   **JURY DEMANDED**
**KUIPER & KARIN KUIPER,**

         Defendants.

---

**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNTIVE RELIEF**

**PRELIMINARY STATEMENT**

1.     This action arises from Defendants' unlawful practice of using false representations and promises to recruit and hire professional-level employees from Mexico to work at Defendants' Texas dairy operation in entry-level jobs. Defendants ostensibly recruited and hired Plaintiffs Adriana Del Rocio Barberena-Rovira, Oswaldo Fernandez-Solis, Pedro Machado-Angulo, and Ivan Morales-Morales to work as animal scientists at Defendants' dairy farm on TN professional visas under the North American Free Trade Agreement (NAFTA). Defendants recruited Plaintiffs, all veterinarians licensed in Mexico, under the pretense that Plaintiffs would gain valuable professional experience related to herd management at Kuiper Dairy. Despite promising three years of employment in professional roles, Defendants assigned Plaintiffs menial work that required no professional training or educational credentials—in direct

1

violation of the TN visa program's requirements. Additionally, when Plaintiffs complained about wage violations, Defendants engaged in a consistent pattern of illegal retaliation to deter Plaintiffs from exercising their rights.

2.      To remedy Defendants' unlawful acts, Plaintiffs bring claims under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1871 (AWPA), the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (FLSA), and Texas common law.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, for claims arising under the laws of the United States; 28 U.S.C. § 1337, for claims arising under the federal laws regulating commerce; 29 U.S.C. § 1854(a), for the claims arising under AWPA; and 29 U.S.C. § 216(b) for claims arising under the FLSA. The Court has supplemental jurisdiction for Plaintiffs' Texas common law claims under 28 U.S.C. § 1367(a) because these state law claims are so closely related to the federal claims that they form a part of the same case or controversy.

4.      Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b) and (c) because the acts or omissions giving rise to Plaintiff's claims occurred in this District and because Defendants reside in this district.

## PARTIES

5.      Plaintiff Adriana Del Rocio Barberena-Rovira is a citizen and resident of Mexico. She is a 2000 graduate of the Universidad Veracruzana, where she earned a bachelor's degree in veterinary and zootechnical medicine. In 2014, she earned her professional license as a *médico veterinario zootecnista* (medical veterinarian and zootechnologist), which allows her to practice as a professional veterinarian in Mexico. Plaintiff Barberena-Rovira was recruited by Defendants

to apply for, applied for, and obtained a TN professional temporary nonimmigrant visa from the U.S. Department of State under 8 C.F.R. § 214.6(a) and 22 C.F.R. § 41.59.

6.      Plaintiff Oswaldo Fernandez-Solis is a citizen and resident of Mexico. He is a 2000 graduate of the Universidad Veracruzana, where he earned a bachelor's degree in veterinary and zootechnical medicine. In 2000, he earned his professional license as a *médico veterinario zootecnista* (medical veterinarian and zootechnologist), which allows him to practice as a professional veterinarian in Mexico. Plaintiff Fernandez-Solis was recruited by Defendants to apply for, applied for, and obtained a TN professional temporary nonimmigrant visa from the U.S. Department of State under 8 C.F.R. § 214.6(a) and 22 C.F.R. § 41.59.

7.      Plaintiff Pedro Machado-Angulo is a citizen and resident of Mexico. He is a 2012 graduate of the Universidad Autonoma Sinaloa, where he earned a bachelor's degree in veterinary and zootechnical medicine. In 2014, he earned his professional license as a *médico veterinario zootecnista* (medical veterinarian and zootechnologist), which allows him to practice as a professional veterinarian in Mexico. Plaintiff Machado-Angulo was recruited by Defendants to apply for, applied for, and obtained a TN professional temporary nonimmigrant visa from the U.S. Department of State under 8 C.F.R. § 214.6(a) and 22 C.F.R. § 41.59.

8.      Plaintiff Ivan Morales-Morales is a citizen and resident of Mexico. He is a 2014 graduate of the Universidad Autonoma Agraria Antonio Narro, where he earned a bachelor's degree in agricultural engineering. In 2015, he earned his professional license as an *ingeniero agrónomo* (agronomist), which allows him to practice as an agronomist in Mexico. Plaintiff Morales-Morales was recruited by Defendants to apply for, applied for, and obtained a TN professional temporary nonimmigrant visa from the U.S. Department of State under 8 C.F.R. § 214.6(a) and 22 C.F.R. § 41.59.

9. Defendant Kuiper Dairy, LLC is a Texas limited liability company whose principal place of business is located at 1865 PR 1233, Hico, Texas 76457. Kuiper Dairy, LLC conducts business in this District, producing goods for sale in interstate commerce.

10. Defendant Clemens Kuiper is a member and registered agent of Kuiper Dairy, LLC. Upon information and belief, he currently resides in Hico, Texas. At all times relevant to this action, Defendant Clemens Kuiper acted directly or indirectly in the interest of Defendant Kuiper Dairy, LLC in relation to its employees, including acting as its registered agent for service of process, supervising day-to-day operations, determining employment practices, determining employees' schedules, and making compensation, hiring, and related organizational decisions.

11. Defendant Karin Kuiper is a member of Kuiper Dairy, LLC. Upon information and belief, she currently resides in Hico, Texas. At all times relevant to this action, Defendant Karin Kuiper acted directly or indirectly in the interest of Defendant Kuiper Dairy, LLC in relation to its employees, including supervising day-to-day operations, determining employment practices, determining employees' schedules, making compensation, hiring, and related organizational decisions, and maintaining employee records.

## FACTUAL ALLEGATIONS

### Kuiper Dairy Recruited Plaintiffs from Mexico

12. Defendants offered Plaintiffs jobs as animal scientists and gave each Plaintiff a TN visa support letter. In reliance on the promises contained in the TN visa support letter, each Plaintiff accepted the job and applied for a TN visa.

13. A TN visa support letter represents a promise by a prospective employer that it will employ temporarily a foreign professional under NAFTA's TN visa program. A TN visa support letter must, pursuant to 8 C.F.R. § 214.6(d)(3)(ii), "fully affirm":

    a.  the applicant's profession;

    b.  a description of the professional activities, including a brief summary of daily job duties;

    c.  the anticipated length of stay;

    d.  the educational qualifications or appropriate credentials which demonstrate that the . . . Mexican citizen has professional level status; and

    e.  the arrangements for remuneration for services rendered.

14. Upon information and belief, the TN visa support letters that Defendants provided to Plaintiffs to submit to the U.S. government contained identical job duties, salaries, lengths of employment, and educational requirements. The letters stated that Kuiper Dairy sought to "employ highly qualified professional personnel that could help increase and improve animal health, quality and profitability." The letters offered each Plaintiff professional employment "as an Animal Scientist to help develop, implement, and oversee the dairy herd health, by applying advanced theoretical and practical knowledge, and skills in the field of animal science . . . at an annual compensation of $33,500 . . . temporarily for 3-years." Kuiper Dairy required candidates "to have a degree equivalent to a bachelor degree in Veterinary Medicine, Agriculture Science, Dairy Science, or a closely related field."

15. The offers of employment to Ms. Barberena-Rovira, Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales from Kuiper Dairy, as stated in the TN visa support

letters, were for a definite period of three years. Each letter described the job as a "temporary position" and offered Plaintiffs "a full-time position . . . temporarily for 3-years period [sic]."

16.     Plaintiffs reasonably relied on the TN visa support letters for their belief that they would be employed as professional-level animal scientists for three years.

17.     The U.S. Embassy in Mexico City issued Mr. Morales-Morales an initial TN visa on March 22, 2018 and a second TN visa on March 27, 2019. The U.S. Embassy in Hermosillo issued Mr. Machado-Angulo a TN visa on July 12, 2018. The U.S. Embassy in Tijuana issued Mr. Fernandez-Solis a TN visa on February 13, 2019. The U.S. Embassy in Tijuana issued Ms. Barberena-Rovira a TN visa on April 17, 2019.

### Kuiper Dairy Exclusively Assigned Plaintiffs Menial Labor

18.     Based on the description of work provided in the TN support letters, Plaintiffs reasonably believed that they would be engaged in professional-level veterinary work for Defendants that would provide them valuable credentials upon their return to Mexico.

19.     Indeed, to comply with the terms of their TN visas, Ms. Barberena-Rovira, Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales had to be engaged in a profession listed in Appendix 1603.D.1 (the "Appendix") of the North American Free Trade Agreement (NAFTA) while they remained in the United States. 8 C.F.R. § 214.6(b). "Animal Scientist" is a profession listed in the Appendix. The Appendix states that a person employed in an animal scientist position must have at least a bachelor's degree. The terms of the TN visa additionally require visa holders to be engaged in "business activities at a professional level," i.e., "undertakings which require that, for successful completion, the individual has a least a baccalaureate degree or appropriate credentials demonstrating status as a professional in a profession set forth in [the] Appendix . . . ." 8 C.F.R. § 214.6(b).

20.     Defendants did not engage Plaintiffs in work that required them to have a baccalaureate degree, as promised in their TN visa support letters. To the contrary, every task that Defendants assigned Plaintiffs was also performed by Plaintiffs' co-workers who lacked any formal education in veterinary medicine or related fields. Each Plaintiff was engaged in exclusively manual labor in the production of dairy products for interstate commerce.

21.     Ms. Barberena-Rovira's supervisors assigned her duties that did not require any specialized education or credentials. From the time she started work for Defendants on or around April 26, 2019, until she left Defendants' employment on or around July 30, 2019, Ms. Barberena-Rovira worked in "corralling," moving different groups of cows between the corrals and the milking parlor and cleaning up manure behind them. At no point was Ms. Barberena-Rovira permitted to exercise her professional discretion in grouping cows or determining milking schedules. Ms. Barberena-Rovira was never permitted to perform any duties listed in the TN visa support letter that she relied on to accept Kuiper Dairy's offer of employment.

22.     As with Ms. Barberena-Rovira, throughout his tenure with Kuiper Diary, Mr. Fernandez-Solis's supervisors assigned him duties unrelated to the animal scientist duties Defendants promised him in his TN visa support letter. From the time he started working for Defendants on or around February 25, 2019 until his wrongful termination on or around June 10, 2019, Mr. Fernandez-Solis engaged solely in manual labor – operating a manure vacuum. Mr. Fernandez-Solis spent each shift maintaining and operating the manure vacuum to remove manure from corrals and passageways in the dairy. At no point during his employment did Defendants permit Mr. Fernandez-Solis to perform any duties listed in the TN visa support letter that he relied on to accept Kuiper Dairy's offer of employment.

23.     Like his co-Plaintiffs, Mr. Machado-Angulo's supervisors also assigned him duties that failed to match either the TN visa requirements or the TN visa support letter provided by Defendants. From the time he started working for Defendants on or around July 20, 2018 until his wrongful termination on or around July 11, 2019, Mr. Machado-Angulo engaged solely in manual labor, working in both "corralling" and "maternity." Like Ms. Barberena-Rovira, Mr. Machado-Angulo's work in corralling exclusively consisted of moving different groups of cows between the corrals and the milking parlor and cleaning up manure behind them. At no point did Defendants permit Mr. Machado-Angulo to exercise his professional discretion in grouping cows or determining milking schedules.

24.     When Mr. Machado-Angulo worked in maternity, his duties were similarly menial tasks that did not require specialized education or credentials. In maternity, Mr. Machado-Angulo worked in the maternity barn, where he removed manure from corrals and passageways, fed and milked cows, moved cows between corrals, and monitored whether any cow had given birth. Unlike the duties detailed in his TN visa support letter, which described "specialized treatment of post calving cows," Mr. Machado-Angulo's duties at no point required or permitted him to use his professional discretion or training. Each task was tightly controlled by Defendant-determined protocols. For example, Mr. Machado-Angulo was required to administer oxytocin to post-calving cows only once—the first time they give milk after giving birth. At no point was Mr. Machado-Angulo permitted to use his specialized training to depart from Defendant-determined protocols.

25.     Like his co-Plaintiffs, Mr. Morales-Morales's supervisors assigned him duties unrelated to the animal scientist duties Defendants promised him in his TN visa support letter. From the time he started working for Defendants on or around the first week of April 2018 until

his wrongful termination on or around February 2, 2020, Mr. Morales-Morales worked in "corralling," "maternity," and "milking." Like Ms. Barberena-Rovira and Mr. Machado-Angulo, Mr. Morales-Morales's work in corralling exclusively consisted of moving different groups of cows between the corrals and the milking parlor and cleaning up manure behind them. At no point was Mr. Morales-Morales permitted to exercise his professional discretion in grouping cows or determining milking schedules.

26.     When Mr. Morales-Morales worked in maternity, his duties similarly mirrored those of Mr. Machado-Angulo, in that his duties were menial tasks that did not require specialized education or credentials. In the maternity barn, Mr. Morales-Morales's primary duties included removing manure from corrals and passageways, feeding and milking cows, moving cows between corrals, and monitoring whether any cow had given birth. . Unlike the duties detailed in his TN visa support letter, Mr. Morales-Morales's duties at no point required or permitted him to use his professional discretion or training.

27.     When Mr. Morales-Morales worked in milking his duties did not require any specialized education or credentials. In the milking parlor, Mr. Morales-Morales cleaned the cows, checked them for infections, and then attached milking machines to the cows. Each task was tightly controlled by Defendant-determined protocols and at no point was Mr. Morales-Morales permitted to use his specialized training to depart from Defendant-determined protocols

**Defendants Failed to Disclose Necessary Information to Plaintiffs**

28.     Defendants failed to provide Ms. Barberena-Rovira, Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales with Spanish translations of the TN visa support letters at any time during recruitment or prior to the commencement of work. Although the TN

visa support letters acknowledged that Plaintiffs were not fluent in English, Plaintiffs were forced to seek help from friends and online translators to understand the contents of the letters.

29.     Defendants failed to provide Plaintiffs with any written disclosures regarding Defendants' workers' compensation insurance or insurance carrier at any time during recruitment or prior to the commencement of work.

30.     Although Plaintiffs stayed in Defendant-provided housing throughout Plaintiffs' tenure with Kuiper Diary, Defendants failed to post informational posters setting forth the terms and conditions of occupancy in the employer-provided housing. Defendants also failed to post a certificate of occupancy in the housing.

31.     Throughout Plaintiffs' tenure with Kuiper Diary, Defendants failed to post informational posters setting forth the rights and protections afforded to workers under the AWPA in the workplace.

32.     Finally, throughout Plaintiffs' tenure with Kuiper Diary, Defendants failed to provide Plaintiffs with pay records that set forth accurately the number of hours worked, the basis on which wages were paid, and Defendants' employer identification number.

**Defendants Retaliated Against Plaintiffs who Complained of Suspected Wage Violations**

33.     During their interviews for TN visas, Ms. Barberena-Rovira, Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales each received a U.S. Department of State know-your-rights pamphlet from US Consular officials. This pamphlet, which was created at the directive of the William Wilberforce Trafficking Victims Protection Reauthorization Act (Public Law 110-457), outlines the rights and protections for temporary workers, including that temporary workers "have the right to be paid for all the work you do . . . [and] may be entitled to

overtime pay of one and a half times the amount of your hourly wage for any hours worked over 40 hours per week."

34.     Based on this U.S. Department of State publication, Plaintiffs reasonably believed that they were entitled to be paid overtime for the extra hours they worked over 40 in a week.

35.     Plaintiffs regularly worked over 40 hours per week. On average, Ms. Barberena-Rovira worked 8 hours per day, 6 days per week. On average, Mr. Fernandez-Solis worked 10 hours per day, 6 days per week. For half his tenure with Kuiper Dairy, Mr. Machado-Angulo worked on average 8 hours per day, 6 days per week. For the other half of his tenure with Kuiper Dairy, Mr. Machado-Angulo worked on average 10 hours per day, 6 days per week. For the majority of his tenure with Kuiper Dairy, Mr. Morales-Morales worked 8 hours per day, 6 days per week. Shortly before his termination, Mr. Morales-Morales worked on average 10 hours per day, 6 days per week.

36.     Contrary to what Plaintiffs understood as their right to overtime under federal law, Defendants did not pay Plaintiffs a regular hourly salary or an overtime premium. Instead, Defendants paid Plaintiffs $11.25 per hour for the first 8 hours worked per day, and $10 per hour for additional hours worked per day.

37.     On Plaintiffs' pay stubs, 8-hour days were recorded as one "hour" each, and each additional hour worked over the standard 8-hour day was compensated in a lump-sum bonus. Thus, for example, in a 16-day pay period where a Plaintiff worked 15 days and an additional 16 hours over the standard 8-hour day, a pay stub would show 15 "hours" worked and a bonus of $160.

38.     Upon information and belief, Plaintiffs did not or would not have earned their promised annual wage of $33,500, based on the hourly wages that Defendants actually paid

Plaintiffs. For example, Mr. Machado-Angulo earned nearly $5,000 less than the promised wage of $33,500 in the year that he worked for Kuiper Dairy. Mr. Morales-Morales also earned less than the promised wage in the nearly two years that he worked for Kuiper Dairy. Likewise, upon information and belief, Ms. Barberena-Rovira and Mr. Fernandez-Solis likely would not have earned the promised wage, had they worked at Kuiper Dairy for a full year.

39.     On several occasions, Ms. Barberena-Rovira, Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales complained to Defendants about their wages, asserting that they were legally entitled to "*horas extras*" (overtime).

40.     Beginning in or around April 2018, Mr. Morales-Morales made oral complaints to a manager named Julio and to Defendants Clemens and Karin Kuiper about his right to overtime compensation.

41.     Beginning in or around August 2018, Mr. Machado-Angulo made oral complaints about his right to overtime compensation to a manager and Defendants Clemens and Karin Kuiper. He renewed these complaints again in or around November 2018, when Kuiper Dairy increased his hours from 8 to 10 hours per day.

42.     Beginning in or around March 2019, Mr. Fernandez-Solis also made frequent oral complaints about his right to overtime compensation to a manager and Defendants Clemens and Karin Kuiper. From March 2019 until June 2019, Mr. Fernando Solis complained almost every two weeks, when he received his pay check, about his entitlement to overtime.

43.     On or around June 4, 2019, Defendants Clemens and Karin Kuiper called Mr. Fernandez-Solis into the office to discuss his frequent complaints about his wages. In the meeting, Mr. and Ms. Kuiper promised to "regularize" his salary.

44.     On or around June 5, 2019, Mr. Fernandez-Solis submitted a written complaint letter to Defendants Clemens and Karin Kuiper on behalf of himself, Ms. Barberena-Rovira, Mr. Machado-Angulo, Mr. Morales-Morales, and three other TN visa workers employed by Defendants. In this letter, Plaintiffs asserted that they had certain rights as workers and directed Defendants to review the William Wilberforce know-your-rights pamphlet. When Mr. Fernandez-Solis presented this letter to Defendants, he attached the pamphlet and pointed out the clauses about pay, including that temporary workers "have the right to be paid for all the work you do . . . [and] may be entitled to overtime pay of one and a half times the amount of your hourly wage for any hours worked over 40 hours per week."

45.     On or around June 10, 2019, Mr. Fernandez-Solis met with Defendants Clemens and Karin Kuiper again. In this meeting, Defendants informed Mr. Fernandez-Solis that they were not obligated to pay him anything more and insisted that he sign several documents in English. When Mr. Fernandez-Solis asked for a translation of the documents, Defendants refused to provide him with one. Unable to understand the documents, Mr. Fernandez-Solis refused to sign. In response, Defendants fired Mr. Fernandez-Solis and told him that he needed to leave immediately. Defendants' reasons for termination were pretextual.

46.     On the same day, on or around June 10, 2019, Defendants Clemens and Karin Kuiper called a meeting with the remaining six TN visa workers. In this meeting, Defendants presented Ms. Barberena-Rovira, Mr. Machado-Angulo, Mr. Morales-Morales and the other three remaining TN visa workers with a purported waiver of claims. This purported waiver stated that "Till June 1st, 2019, Kuiper Dairy has paid all of the hours [employee's name] worked for us." Defendants told all the workers present that if they did not sign the form, Defendants would

not renew their TN visas, thus terminating their employment before the end of the promised three-year term.

47.     Mr. Machado-Angulo asked for a Spanish translation of the document. When Defendants refused to provide him with one, a manager named Julio translated the form orally. Upon understanding the document, Mr. Machado-Angulo strongly disagreed with its contents because he believed that he had not been paid properly for all the hours he worked since Mr. Machado-Angulo never received overtime compensation.

48.     Despite fearing for his job, Mr. Machado-Angulo refused to sign the purported waiver of claims.

49.     Ms. Barberena-Rovira and Mr. Morales-Morales also believed the purported waiver to be false because they had not received overtime pay for the extra hours they worked. However, Ms. Barberena-Rovira and Mr. Morales-Morales ultimately signed the document because of Defendants' threat to end their employment before the end of the promised three-year term if they refused to do so.

50.     Approximately one month later, Mr. Machado-Angulo's worst fears were confirmed. Defendants refused to support renewal of Mr. Machado-Angulo's TN visa. Defendants provided Mr. Machado-Angulo with no explanation or justification for this failure to act. As a result, Mr. Machado was left without a job or immigration status, when the visa expired on or around July 11, 2019.

51.     By the end of July 2019, Ms. Barberena-Rovira determined that she would never receive the salary or professional-level experience she had been promised during recruitment. Thus, on or around July 30, 2019, Ms. Barberena-Rovira left her employment with Defendants.

52.     Mr. Morales-Morales continued to work for Defendants for several more months. However, in January 2020, Defendants changed Mr. Morales-Morales' work schedule, increasing the overtime hours that he had to work each week. When Mr. Morales-Morales again asked for overtime pay, Defendants refused. After Mr. Morales-Morales again raised the issue of pay, Defendants immediately fired him without stating a reason. Mr. Morales-Morales's last day of work was on or around February 1, 2020.

## Plaintiffs Are Covered Under the AWPA

53.     At all times relevant to this action, Defendants were agricultural employers under the AWPA, 29 U.S.C. § 1802(2), in that they owned and/or operated a dairy farm or ranch, and processing establishment, and they recruited, solicited, hired, and employed Plaintiffs and others as migrant agricultural workers.

54.     Plaintiffs were migrant agricultural workers under AWPA, 29 U.S.C. § 1802(8)(A), at all times relevant to this action in that they were employed by Defendants (a) in agricultural employment, specifically in the raising, caring for, and management of livestock; (b) of a temporary nature, i.e., for a three-year term pursuant to the TN nonimmigrant temporary visa regulations and Defendants' offers of employment to them; and (c) were required to be absent overnight from their permanent place of residence in Mexico.

## CLAIMS FOR RELIEF

### Count 1: Violations of 29 U.S.C. § 215(a)(3) – FLSA
### (FLSA Anti-Retaliation Provision)

55.     The FLSA makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . ."

29 U.S.C. § 215(a)(3). The term "filed any complaint" encompasses internal oral and written complaints.

56.     By filing multiple oral and written complaints regarding suspected wage violations, as described above in paragraphs 39-52, Plaintiffs participated in protected activity under the FLSA.

57.     Plaintiffs made these complaints based on a reasonable, good faith belief that they were entitled to overtime compensation for the hours above 40 that they worked each week. By referring to the rights outlined in the William Wilberforce know-your-rights pamphlet, as described above in paragraphs 44, Plaintiffs framed these complaints in terms of a reasonable, good faith belief that the law had been violated.

58.     Plaintiffs Fernandez-Solis, Machado-Angulo, and Morales-Morales suffered materially adverse employment actions when Defendants terminated their employment well before their three-year work anniversaries, as described above in paragraphs 45, 50, and 52. Further, as described in paragraphs 45, 50, and 52, all Defendants are individually liable for violations of 29 U.S.C. § 215(a)(3)

59.     Defendants' animus towards protected conduct, as well as the temporal proximity between complaints and terminations, as described above in paragraphs 39-52, establishes a causal link between the protected activity and the adverse action.

60.     Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales's wrongful termination caused them monetary damages.

61.     Plaintiffs Fernandez-Solis, Machado-Angulo, and Morales-Morales are therefore entitled to recover actual and liquidated damages. 29 U.S.C. § 216(b).

**Count 2: Violations of 29 U.S.C. § 1855(a)**
**(AWPA Anti-Discrimination Provision)**

62.     The AWPA makes it unlawful to "intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any migrant or seasonal agricultural worker because such worker has, with just cause, filed any complaint . . . or because of the exercise, with just cause, by such worker on behalf of himself or others of any right or protection afforded by this chapter." 29 U.S.C. § 1855(a).

63.     By filing multiple oral and written complaints regarding suspected wage violations and exercising protections afforded by the AWPA that prohibit employers from knowingly providing false and misleading information or violating the terms of any working arrangement without justification, as described above in paragraphs 39-52, Plaintiffs participated in protected activity under the AWPA.

64.     Plaintiffs filed complaints and exercised protections afforded by the AWPA with just cause because they had a reasonable, good faith belief that they were entitled to overtime compensation based on the William Wilberforce know-your-rights pamphlet.

65.     Defendants alternately intimidated, threatened, and discharged Plaintiffs, by obligating Plaintiffs to sign forms and purported waivers of claims, threatening to terminate Plaintiffs' employment, and terminating the employment of Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales, as described above in paragraphs 45, 46, 50 and 52.

66.     Defendants' animus towards protected conduct, as well as the temporal proximity between complaints and terminations, as described above in paragraphs 39-52, establishes a causal link between the protected activity and the discriminatory action.

67.     Defendants' violations of section 1855(a) were intentional under 29 U.S.C. § 1854(c)(1) because they deliberately and consciously obligated Plaintiffs to sign forms and

purported waivers of claims, threatened to terminate Plaintiffs' employment, and terminated the employment of Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales.

68.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

### Count 3: Violations of 29 U.S.C. § 1821(a)
**(AWPA Written Disclosures Requirements)**

69.     The AWPA requires agricultural employers to "ascertain and disclose in writing" at the time of recruitment several pieces of information about the employment, including the "wage rates to be paid; . . . kinds of activities in which the worker may be employed; the period of employment; . . . and whether state workers' compensation coverage is provided." 29 U.S.C. § 1821(a).

70.     Defendants' misrepresented the wage rates to be paid at the time of Plaintiffs' recruitment. Defendants represented to Plaintiffs and the U.S. government that Plaintiffs would be paid an annual salary of $33,500. As described in paragraphs 36-38 above, Plaintiffs were paid an irregular hourly wage and earned substantially less than their promised salary.

71.     Defendants' representations at the time of Plaintiffs' recruitment regarding the kinds of activities in which the worker may be employed were also false. Defendants represented to Plaintiffs and the U.S. government that Plaintiffs would be employed as professional animal scientists "to help develop, implement, and oversee the dairy herd health, by applying advanced theoretical and practical knowledge, and skills in the field of animal science." As described in paragraphs 20-27 above, Plaintiffs were never assigned these or similar duties of a professional nature, as required under the TN visa rules.

72.     Defendants' additionally misrepresented the period of employment at the time of Plaintiffs' recruitment, informing Plaintiffs and the U.S. government that Plaintiffs would be

employed for a period of three years. Instead, as described in paragraphs 45, 50, and 52 above, Defendants terminated Mr. Fernandez-Solis's, Mr. Machado-Angulo's, and Mr. Morales-Morales's employment well before their three-year work anniversaries.

73.     Finally, as described in paragraph 29, Defendants failed to provide Plaintiffs with any information regarding state workers' compensation coverage.

74.     Defendants' violations of section 1821(a) were intentional under 29 U.S.C. § 1854(c)(1) because they deliberately and consciously misrepresented Plaintiffs' terms, conditions, and terms of employment or failed to provide written disclosures at all.

75.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

## Count 4: Violations of 29 U.S.C. § 1821(b)
### (AWPA Workplace Posting Requirements)

76.     The AWPA requires agricultural employers to post informational posters in the workplace setting forth the rights and protections afforded to workers under the AWPA. 29 U.S.C. § 1821(b).

77.     As described above in paragraph 31, Defendants failed to meet this posting requirement.

78.     Defendants' violation of section 1821(b) was intentional under 29 U.S.C. § 1854(c)(1).

79.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

## Count 5: Violations of 29 U.S.C. § 1821(c)
### (AWPA Housing Posting Requirements)

80.     The AWPA requires agricultural employers to post informational posters in employer-provided housing setting forth the terms and conditions of occupancy. 29 U.S.C. § 1821(c).

81.     As described above in paragraph 30, Defendants failed to meet this posting requirement.

82.     Defendants' violation of section 1821(c) was intentional under 29 U.S.C. § 1854(c)(1).

83.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

## Count 6: Violations of 29 U.S.C. § 1821(d)
### (AWPA Recordkeeping Requirements)

84.     The AWPA requires agricultural employers to maintain records regarding employees' hours and wages and to provide each worker "with an itemized written statement of this information at the time of payment for each pay period . . . ." 29 U.S.C. § 1821(d); 29 C.F.R. § 500.80(d).

85.     As described above in paragraphs 32 and 37, Defendants failed to provide Plaintiffs with an itemized written statement that accurately reflected the basis on which their wages were paid or the number of hours worked per pay period.

86.     Defendants' violations of section 1821(d) were intentional under 29 U.S.C. § 1854(c)(1) because they deliberately and consciously misrepresented Plaintiffs' earnings in the pay stubs provided to Plaintiffs.

87.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

## Count 7: Violations of 29 U.S.C. § 1821(f)
### (AWPA Knowingly Providing False & Misleading Information)

88.     AWPA prohibits agricultural employers from "knowingly provid[ing] false or misleading information to any migrant agricultural worker concerning the terms, conditions, or existence of agricultural employment required to be disclosed by subsection (a), (b), (c), or (d)," which includes the "kinds of activities on which the worker may be employed," and the period of employment. 29 U.S.C. § 1821(f).

89.     Defendants knowingly provided false and misleading information in the TN visa support letters by representing that they would pay Plaintiffs an annual salary of $33,500. As described in paragraphs 36-38 above, Plaintiffs were paid an irregular hourly wage and earned substantially less than their promised salary.

90.     Defendants knowingly provided false and misleading information in the TN visa support letters by misrepresenting the kinds of activities in which Plaintiffs would be employed. As described in paragraphs 20-27 above, Plaintiffs were assigned menial work, rather than the professionalized tasks they were promised.

91.     Defendants knowingly provided false and misleading information in the TN visa support letters by representing that the period of Plaintiffs' employment was a three-year term. As described in paragraphs 45, 50, and 52 above, Defendants terminated Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales far earlier.

92.     Defendants' violations of section 1821(f) were intentional under 29 U.S.C. § 1854(c)(1) because they deliberately and consciously misrepresented the terms and conditions of Plaintiffs' employment in the TN visa support letters they provided to Plaintiffs and the U.S. Department of State.

93.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

## Count 8: Violations of 29 U.S.C. § 1821(g)
### (AWPA Form & Language Requirements)

94.     The AWPA requires agricultural employers to provide written disclosures related to terms and conditions of employment in Spanish, "as necessary and reasonable" for workers "who are not fluent or literate in English." 29 U.S.C. § 1821(g).

95.     As described in paragraph 28, Defendants failed to provide Plaintiffs with a Spanish translation of the TN visa support letters or written disclosures in Spanish in any other form.

96.     Defendants' violations of section 1821(g) were intentional under 29 U.S.C. § 1854(c)(1) because they deliberately and consciously acknowledged in the TN visa support letters that Plaintiffs were not fluent in English, as described in paragraph 28, yet nevertheless unreasonably failed to translate the TN visa support letters.

97.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

## Count 9: Violations of 29 U.S.C. § 1822(c)
### (AWPA Working Arrangement)

98.     The AWPA prohibits agricultural employers from violating the terms of any working arrangement "without justification." 29 U.S.C. § 1822(c).

99.     Defendants, without any justification, violated Plaintiffs' working arrangements established in the TN visa sponsorship letters and as defined under the TN visa regulations by changing the pay from an annual to an hourly salary basis and paying Plaintiffs less than the salary described in the TN visa sponsor letters, as described in paragraphs 36-38 above.

100.     Defendants also violated Plaintiffs' working arrangements, without any justification, by assigning them menial tasks unrelated to the professional work described in the TN visa support letters and in violation of the TN visa regulations, as described in paragraphs 20-27 above.

101.     Finally, Defendants violated Plaintiffs' working arrangements, without any justification, by terminating Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales before the completion of their three-year terms of employment, as described in paragraphs 45, 50, and 52 above.

102.     Defendants' violations of section 1822(c) were intentional because they deliberately and consciously compensated Plaintiffs at a lower rate and on a different basis than promised at the time of recruitment; assigned Plaintiffs tasks in conflict with the representations they made to Plaintiffs and the U.S. government in the TN visa support letters; and knowingly terminated Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales before any of the three had completed the three-year terms of their contracts.

103.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever is higher. 29 U.S.C. § 1854(c)(1).

### Count 10: Violations of 29 U.S.C. § 1823(b)
### (AWPA Safety and Health of Housing)

104.     The AWPA prohibits agricultural employers from housing migrant agricultural workers in any facility "unless either a State or local health authority or other appropriate agency has certified that the facility or property meets applicable safety and health standards . . . [and] a copy of the certification of occupancy is posted at the site." 29 U.S.C. § 1823(b).

105.     As described above in paragraph 30, Defendants failed to meet this posting requirement and, upon information and belief, failed to have the housing inspected at all.

106.     Defendants' violation of section 1823(b) was intentional under 29 U.S.C. §
1854(c)(1).

107.     Plaintiffs are therefore entitled to recover statutory or actual damages, whichever
is higher. 29 U.S.C. § 1854(c)(1).

### Count 11: Breach of Contract under Texas Law

108.     Defendants offered Plaintiffs employment contracts for a definite period of three
years when it provided each with a TN visa support letter to submit to the U.S. Consulate during
their TN visa interviews. Plaintiffs accepted Defendants' offer of three-year employment,
including the terms and conditions of that employment as described in their TN visa support
letters, by applying for their TN visas and, after the U.S. Consulate's approval of those visas,
traveling from their homes in Mexico to begin employment with Defendants in Texas.

109.     Defendants breached the Plaintiffs' employment contracts by failing to comply
with various material promised terms and conditions of employment, including:

   a.  The compensation, by failing to pay the salaries promised in Plaintiffs' TN
       visa support letters;

   b.  The job duties and responsibilities promised in their TN visa support letters,
       by assigning Plaintiffs menial duties in conflict with the professional animal
       scientist duties described in their TN visa support letters;

   c.  The term of employment, by terminating Plaintiffs' employment before the
       expiration of the three-year terms promised in their TN visa support letters.

110.     Plaintiffs mitigated their damages by continuing to work for Defendants after
Defendants breached their contract. Plaintiffs then sought alternate employment after alternately
leaving Kuiper Dairy or being terminated. Plaintiffs Barberena-Rovira and Fernandez-Solis now

work in Mexico, while Plaintiff Machado-Angulo is employed in the US on a new TN visa. Plaintiff Morales-Morales is currently seeking alternative employment.

111.    Plaintiffs are therefore entitled to recover actual, incidental, and consequential damages under Texas common law. Plaintiffs are also entitled to attorney's fees and costs under Tex. Civ. Prac. & Rem. Code Ann. § 38.001.

## Count 12: Fraud under Texas Law

112.    Defendants materially represented to Plaintiffs in the TN visa support letters that: (1) Defendants would pay Plaintiffs an annual salary of $33,500; (2) Defendants would assign Plaintiffs professional tasks; and (3) Defendants would employ Plaintiffs for a three-year term, as described above in paragraph 14.

113.    These representations were false. As described above in paragraphs 20-27, 36-38, 45, 50, and 52, Defendants paid Plaintiffs an irregular hourly wage that fell below the promised salary; Defendants assigned Plaintiffs menial work; and Defendants terminated Mr. Fernandez-Solis, Mr. Machado-Angulo, and Mr. Morales-Morales well before the promised three-year employment term ended.

114.    Defendants had no intention of abiding by the representations they made to Plaintiffs at the time of recruitment. Thus, Defendants knew these representations were fraudulent at the time Defendants provided Plaintiffs with the TN visa support letters.

115.    Defendants intended to induce Plaintiffs to act upon these fraudulent representations when Defendants provided Plaintiffs with the TN visa support letters.

116.    Plaintiffs actually and justifiably acted in reliance on Defendants' fraudulent representations by applying for their TN visas and traveling from their homes in Mexico to work for Defendants in Texas.

117.    As a direct and proximate result of Plaintiffs' reliance on Defendants' fraudulent representations, Plaintiffs suffered monetary damages.

118.    Plaintiffs are therefore entitled to recover actual damages under Texas common law. Plaintiffs are also entitled to recover exemplary damages under Tex. Civ. Prac. & Rem. Code Ann. § 41.003(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

A.  Declare that Defendants violated the anti-retaliation provision of the FLSA, as set forth in Count 1;

B.  Grant judgment in favor of Plaintiffs Fernandez-Solis, Machado-Angulo, and Morales-Morales and against Defendants, jointly and severally, on their claims under the FLSA, as set forth in Count 1;

C.  Award Plaintiffs Fernandez-Solis, Machado-Angulo, and Morales-Morales actual and liquidated and damages and other equitable relief as may be necessary or appropriate on the FLSA anti-retaliation claim, as set forth in Count 1;

D.  Declare the Defendants violated the anti-discrimination provision of the AWPA, as set forth in Count 2;

E.  Grant judgment in favor of Plaintiffs and against Defendants, jointly and severally, on Plaintiffs' claims under the AWPA, as set forth in Count 2;

F.  Award Plaintiffs actual damages or statutory damages, whichever is greater, and other equitable relief as may be necessary or appropriate on the AWPA anti-discrimination claim, as set forth in Count 2;

G. Declare that Defendants intentionally violated the AWPA and its attendant regulations, as set forth in Counts 3-10;

H. Grant judgment in favor of Plaintiffs against Defendants, jointly and severally, on Plaintiffs' claims under the AWPA, as set forth in Counts 3-10;

I. Award each Plaintiff actual damages or statutory damages, whichever is greater, and other equitable relief as may be necessary or appropriate for each violation of the AWPA, as set forth in Counts 3-10;

J. Declare that Defendants breached their contract with Plaintiffs under Texas common law, as set forth in Count 11;

K. Grant judgment in favor of Plaintiffs against Defendants, jointly and severally, on the breach of contract claim, as set forth in Count 11;

L. Award Plaintiffs their actual, incidental, and consequential damages for the breach of contract claim, as set forth in Count 11;

M. Declare that Defendants intentionally committed fraud by making material misrepresentations to Plaintiffs under Texas common laws, as set forth in Count 12;

N. Grant judgment in favor of Plaintiffs against Defendants, jointly and severally, on the fraud claim, as set forth in Count 12;

O. Award Plaintiffs actual damages or exemplary damages for the fraud claim, as set forth in Count 12;

P. Enter an order awarding Plaintiffs the costs of this action and reasonable attorneys' fees; and,

Q. Enter an order granting such other and further relief as may be necessary or appropriate.

Dated this 31st day of March 2020.

        Respectfully submitted,


By:   /s/ Christopher Benoit              /s/ Julie Pittman
      Christopher Benoit                  Julie Pittman*
      Texas State Bar No. 24068653        New York State Bar
                                          *Application for Admission to Practice in
      TEXAS RIOGRANDE LEGAL               W.D. Texas Pending
      AID, INC.
      1331 Texas Ave.                     CENTRO DE LOS DERECHOS DEL
      El Paso, TX 79901                   MIGRANTE, INC.
      Tel: 915-585-5100                   Av. Nuevo León 159, Int. 101
      Fax: 915-544-3789                   Col. Hipódromo, Del. Cuauhtémoc
      Email: cbenoit@trla.org             Mexico City, MEXICO 06100
                                          Tel: 855-234-9699
                                          Fax: 443-817-0806
                                          Email: julie@cdmigrante.org


      *Attorneys for Plaintiffs*